THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD COLE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES SCOTT, Defendant-Appellant.

First District (4th Division)   Nos. 82—2506, 82—2650 cons.

Opinion filed February 21, 1985.

Steven Clark and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant Reginald Cole.

James J. Doherty, Public Defender, of Chicago (Donna Hickstein-Foley, Assistant Public Defender, of counsel), for appellant James Scott.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendants, James Scott and Reginald Cole, were jointly indicted for the murder of Jerome Powell. Following a joint trial in the circuit court of Cook County, a jury found them guilty of murder and the court sentenced them to the Illinois Department of Corrections, Scott to a term of 35 years and Cole to a term of 27 years.

A review of the issues each defendant raises in his separately prosecuted appeal indicates that certain issues have been argued by both defendants. Accordingly, while we elect to address the two appeals in one opinion, we shall deal with the issues each has raised separately in addition to those both have argued.

On appeal, both defendants argue that the trial court's refusal to sever their joint trial resulted in extreme prejudice and prevented each of them from receiving a fair trial. In addition, Cole maintains that he was not proved guilty beyond a reasonable doubt, while Scott argues that (1) his custodial admission should have been suppressed as being obtained in violation of (a) his sixth amendment right to counsel and (b) the material witness rule (Ill. Rev. Stat. 1983, ch. 38, par. 114—11(d)); (2) the jury should not have found him guilty of murder because he presented evidence of self-defense; and (3) he was denied a fair trial because prosecutorial misconduct, including impeachment questioning and comments during closing argument, prejudiced his theory of self-defense.

We affirm the defendants' convictions of murder.

FACTS

Testimony by several eyewitnesses presented at trial established that at approximately 11 p.m. on the evening of August 22, 1981, two men were seen walking down 29th Street toward State Street.

One, identified as James Scott, was tall, thin, and wearing a green surgical suit; the other, identified as Reginald Cole, was short and stout. One witness watched as Scott approached a group of men standing in the center of the crosswalk at the corner, while Cole stood in the walkway of a building across the street and looked up and down several times. Scott walked up to one of the men, later identified as Jerome Powell, and fired a gun, whereupon Powell began to run. According to the witness, Scott fired at least three more shots, finally hitting Powell in the head. Both Scott and Cole then ran toward 2840 State Street.

The Chicago police arrived to find Powell lying at the side of the street, a bullet wound in his head. As an officer knelt to examine the injured man, an unidentified child handed him an eight-inch table knife, which he placed on the ground near the victim. In the police photographs, the knife could be seen approximately two feet from a pool of Powell's blood. A *post mortem* examination of the body revealed that death had resulted from a single wound to the head and that marks on the victim's arm were consistent with narcotics addiction.

Nearly two months later, on October 20, 1981, Scott was arrested pursuant to warrant, his photograph having been identified by the eyewitnesses. After police detective Roberts informed him of his *Miranda* rights and questioned him on three occasions, Scott made a written statement in which he admitted that he had acted as the lookout while Cole shot Powell in retaliation for Powell's earlier shooting of Cole's cousin.

On November 29, 1981, Roberts learned that Cole had been arrested under another name. When Roberts interviewed Cole and showed him Scott's statement, however, Cole told Roberts that he had been the lookout for Scott, who had shot Powell on orders from a gang leader. Cole stated to Roberts that he had watched as Scott first shot one of the men at the bus stop and then continued to fire as the man ran and finally fell. Both defendants then filed their first motions for severance of their joint trial, and both motions were denied.

At trial, both defendants testified. Cole stated that on the evening of Powell's shooting, he accompanied Scott to 29th and State at the direction of some members of the Black Disciple Nation, the gang to which both belonged, ostensibly to pick up some drugs. When they arrived at the designated location, however, the leader of a local Disciple faction directed Scott toward two men at a bus stop; Scott in turn told Cole to act as his lookout while Scott took care of

"some Nation business." Cole argued that he did not want to get involved, but he was ordered by Scott's superior to follow orders. Cole testified that although he crossed the street and walked toward his lookout location, he had determined to catch a bus and leave the area. Cole stated that as he stood watching for the bus, he saw Scott arguing with two men on the other side of the street. Cole began walking away, but when he heard the gunshots, he started to run and, without looking back, caught a bus a block away.

In contrast, Scott testified at trial that he and Cole had traveled to 29th and State to visit Cole's cousin, who had been shot. Upon learning that the cousin was still hospitalized, the two men went to the apartment of one T.Y., a friend of Cole's, to smoke marijuana. As they were leaving T.Y.'s, they began to argue over whether to take a bus or a cab back to Cole's apartment. They separated, and Scott testified that he did not see Cole again until later that evening.

Meanwhile, as Scott walked past the bus stop on his way to visit his girlfriend, two men approached him asking for drugs. Scott, an admitted drug dealer for the gang, said he had none, whereupon one of the men, whom Scott identified as Powell, began to demand money. When Scott told him he "didn't have any," Powell pulled out a "shining object" and started swinging at Scott, hitting his clothing but not cutting his body. Scott, seeing a blade on the object, pulled out his gun and fired "about three" times. He then returned to T.Y.'s and found Cole, and the two went on to Scott's girlfriend's house.

After deliberation, the jury found both defendants guilty of murder, and this appeal followed.

OPINION

I

■ On appeal, both defendants claim that the trial court erred in denying their repeated motions for severance on the ground that their defenses were antagonistic. Our examination of their various motions for severance, the arguments of counsel that accompanied each motion, and the trial court's fully stated reasons for denying each motion has led us to conclude that the trial court did not err in its rulings.

"The general rule is that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice." (*People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, 463.) A defendant who believes that a joint

trial will prejudice his chances of receiving a fair trial may request severance by a pretrial motion. (Ill. Rev. Stat. 1983, ch. 38, par. 114—8.) The burden is on the defendant requesting severance to prove, prior to trial, that a joint trial would be prejudicial; the mere apprehension that defenses may prove antagonistic is an insufficient ground for severance. (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) The defendant's motion must specifically detail his and his codefendant's defenses, the substance of the testimony to be heard in the trial, and the manner in which the defenses conflict. (*People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710.) To be awarded a separate trial is not a matter of right; the decision falls within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.

Trial courts generally grant motions for severance in one of two situations. The first occurs when a codefendant has made hearsay admissions implicating the defendant. In such cases, the "defendant may be denied his constitutional right of confrontation if the codefendant's hearsay admission is admitted against him and the defendant is unable to cross-examine the codefendant because the latter does not testify." (*People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468 N.E.2d 969, 973.) In the instant case, not only did both defendants testify, but neither pretrial statement was exculpatory; while in their pretrial statements they definitely disagreed over who actually had shot Powell, both defendants' pretrial statements were clear admissions of guilt according to the statutory and common law theory of accountability. *People v. Sanders* (1981), 103 Ill. App. 3d 700, 431 N.E.2d 1145, *cert. denied* (1982), 459 U.S. 871, 74 L. Ed. 2d 131, 103 S. Ct. 157.

"A second type of prejudice occurs when defenses of the various defendants are so antagonistic that a severance is imperative to assure a fair trial." (*People v. Daugherty* (1984), 102 Ill. 2d 533, 542, 468 N.E.2d 969, 973.) Such antagonism occurs, for example, when each defendant protests his innocence and condemns the other. (*People v. Braune* (1936), 363 Ill. 551, 555, 2 N.E.2d 839, 841.) Although both Scott and Cole claim that they were faced with this second type of prejudice and brought it to the trial court's attention, we do not agree with their characterization of the evidence. First, their pretrial motions were simply generalized statements that antagonism existed and did not contain any of the detailed proof required by *People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710. Second, the antagonism that did develop was not between the defendants' trial

testimony but rather between each defendant's trial testimony and his codefendant's pretrial statement.

While each defendant did, in effect, "protest his innocence" in his trial testimony, Scott by claiming self-defense and Cole by claiming withdrawal, neither accused the other of committing murder. Cole's testimony at trial was not antagonistic to Scott's claim to self-defense because, according to Cole, he left the scene before the shooting and did not look back to see what had happened. His position is entirely consistent with Scott's claim at trial that Powell's attack with a knife forced him to shoot in self-defense. As succinctly stated by the State, "defendant asks this Court to assume that because each defendant was impeached with his own pretrial confession in which he implicated his co-defendant, the jury must have focused solely on this impeachment evidence, defied instructions to the contrary and used each defendant's pretrial statement as substantive evidence of the guilt of the other defendant." Further, defendants must argue that the jury would not have convicted them absent the improperly considered impeachment evidence. Both arguments are erroneous and entirely inconsistent with one of the basic assumptions underlying the theory of a jury trial, that the jury is able to follow instructions. *Opper v. United States of America* (1954), 348 U.S. 84, 99 L. Ed. 101, 75 S. Ct. 158.

■ Even the third motion for severance, made after Cole testified that Detective Roberts had told him during questioning that the police had evidence linking Scott with several other homicides, was not erroneously denied. Prior to trial, Cole's counsel had agreed to warn Cole against making prejudicial statements concerning Scott and other police investigations, a practice found acceptable in *People v. Chianakas* (1983), 114 Ill. App. 3d 496, 448 N.E.2d 620. Although the warning apparently never was given, the trial court concluded that a proper admonishment to the jury was sufficient to overcome the prejudice, a discretionary decision with which we agree in light of the other evidence establishing the guilt of both Scott and Cole. *Brown v. United States* (1973), 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565.

## II

■ Scott's second argument on appeal is that his pretrial admission should have been suppressed as it had been obtained in violation of his sixth amendment right to counsel. He maintains that the issuance of a complaint charging him with murder and his arrest pursuant to a warrant constituted the initiation of adversarial judicial pro-

ceedings, and therefore his custodial interrogation was a "critical stage" of the prosecution requiring the presence of counsel. (*People v. Hinton* (1974), 23 Ill. App. 3d 369, 319 N.E.2d 313.) We disagree, based on the recent Illinois Supreme Court decision of *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261.

In *Owens*, as here, defendant argued that his sixth amendment right to counsel attached upon the filing of a complaint and issuance of an arrest warrant. Noting that neither the United States nor the Illinois Supreme Court has resolved whether sixth amendment rights attach under those circumstances, the court found that no such resolution was necessary because the validity of defendant's waiver of those rights was not affected.

In both cases, defendant was informed of his *Miranda* rights before the commencement of interrogation. The crucial point in *Owens* was that although defendant claimed that before he could knowingly waive his sixth amendment right to counsel he had a right to be informed that a complaint had been filed charging him with murder, the waiver he signed after acknowledging his *Miranda* rights was not void for sixth amendment purposes because the defendant already possessed that information. Indeed, in the instant case, Scott admitted that he had lied while making his custodial statement because he was afraid he would be charged with murder.

"Thus, he was aware of the severity of the situation facing him and, since he had been given his *Miranda* warnings, he knew he had the right to have an attorney present during questioning. Considering these facts, together with defendant's familiarity with the *Miranda* warnings, we have no doubt of the admissibility of the statements irrespective of whether sixth amendment rights had attached at the time the statements were made." *People v. Owens* (1984), 102 Ill. 2d 88, 102-03, 464 N.E.2d 261, 267.

Accordingly, we find no error in the trial court's denial of Scott's motion to suppress his confession based on an alleged violation of a sixth amendment right to counsel.

■ Defendant Scott also claims that the trial court erred in refusing to suppress his admission because the State failed to call all material witnesses at the suppression hearing and did not explain their absence. We find this claim similarly to be without merit.

In his post-trial motion, Scott claimed that his custodial statement was coerced in part by physical attacks from various unknown black policemen, one who struck him at the time of his arrest and two others who struck him repeatedly while he was in custody. In his

appeal, however, defendant complains that because the two white policemen who drove him from his house to the police station did not testify at his suppression hearing, his conviction for murder should be reversed.

We note that section 114—11(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—11(d)) requires the defendant to object during the suppression hearing in the trial court to the State's failure to call all material witnesses to the making of his confession. Further, although the State bears the burden of proving the confession was voluntary, once it makes out a *prima facie* case of voluntariness, the burden shifts to the defense to produce evidence that the confession was involuntary. (*People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154.) In the instant case, Scott not only offered absolutely no evidence to support his allegation of physical abuse, but he also did not raise any objection during the hearing, as required by statute, to the State's failure to call the two white officers. We therefore find no error in the trial court's refusal to suppress Scott's admission.

### III

Defendant Scott next contends that his murder conviction should be reversed because he had presented evidence showing that the shooting of Jerome Powell was justified as self-defense, and the jury was compelled to believe that evidence. We find Scott's contention meritless.

The only evidence Scott presented to support his self-defense theory was his claim that Powell had threatened him with the table knife that was later given by an unidentified child to the policeman investigating the shooting. However, in his pretrial statements, Scott never mentioned self-defense, contending only that he had been the lookout while Cole shot Powell; further, Scott admitted that he had claimed to be only the lookout in an effort to avoid being charged with murder, a charge he had a better chance of avoiding with a believable claim to self-defense.

Although the evidence given by Ricky Jackson, the eyewitness, did not exactly track all the other evidence, the jury found it to be inherently more believable than Scott's claim of self-defense. Whether certain facts and circumstances would induce a reasonable apprehension of serious bodily harm is a question of fact for the jury. (*People v. Moore* (1976), 43 Ill. App. 3d 521, 357 N.E.2d 566.) A jury's finding on the issue of self-defense will not be overturned unless the evidence is so clearly contrary to the finding and renders that

finding so improbable that a reasonable doubt is left as to the defendant's guilt. *People v. Barnes* (1983), 117 Ill. App. 3d 965, 453 N.E.2d 1371.

It is obvious to us that Scott's claim was not only contradicted by other testimony but was rendered incredible by his own admission on the stand that he was a liar, a felon, a drug dealer, and a leader in the Black Disciple Nation. We do not agree that, in light of all these factors, Scott's evidence of self-defense was sufficiently persuasive to create a reasonable doubt of his guilt. Accordingly, we decline to overturn the jury's decision.

## IV

■ Defendant Scott's final argument is that prosecutorial misconduct, including impeachment questioning and comments during closing argument, prejudiced his theory of self-defense. We note that because no specific reference was made to the questioned remarks in Scott's motion for a new trial, they were not sufficiently brought to the attention of the trial court. (*People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) The failure to include alleged errors in the post-trial motion constitutes a waiver of those issues on appeal given where objections were made at trial. *People v. Thomas* (1983), 116 Ill. App. 3d 216, 452 N.E.2d 77.

## V

■ Defendant Cole's final contention on appeal is that his pre-trial statement was contradicted in so many respects by the evidence given by the medical examiner that the jury should have believed his trial testimony asserting that he had withdrawn from participation in the crime before Scott actually shot Powell. We disagree.

First, Cole's actions, as he described them at trial, were insufficient to constitute withdrawal from participation in the murder in that he never communicated to Scott his intent to withdraw. Such communication is essential to a defense of withdrawal. (*People v. Rybka* (1959), 16 Ill. 2d 394, 158 N.E.2d 17.) Section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c)) establishes that a person is legally accountable for the conduct of another if before or during the commission of an offense, and with the intent to promote or facilitate such commission, he aids or agrees to aid the other person in the planning or commission of the offense; section 5—2(c)(3) of that statute relieves a person of such accountability only if he terminates his efforts to aid in the commission of the offense and deprives his former efforts of effectiveness, warns law

enforcement authorities, or otherwise acts to prevent the commission of the offense. According to his own testimony, Cole took none of these latter steps.

Second, the testimony of the eyewitness confirmed Cole's actions as the lookout, which was the position he admitted to in his pretrial statement. Finding that there was sufficient competent evidence presented upon which the jury could base a verdict of guilty, we hold that there was no error in Cole's conviction for murder.

In light of all the above, we affirm the decision of the trial court convicting both Scott and Cole of the murder of Jerome Powell.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.