THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HOSEA KAISER FORT, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY CANNON, Defendant-Appellant.

First District (2nd Division)   Nos. 82—2433, 82—2452 cons.

Opinion filed August 19, 1986.

Steven Clark and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant Hosea Kaiser Fort.

James J. Doherty, Public Defender, of Chicago (Nicolette Katsivalis and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellant Terry Cannon.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and John J. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Defendants, Hosea Kaiser Fort and Terry Cannon, were found guilty after a jury trial of murder and armed robbery. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—1, 18—2.) Defendant Fort was sentenced to serve extended, concurrent terms of 80 years for murder and 60 years for armed robbery. Defendant Cannon was sentenced to serve concurrent terms of 30 years for murder and 10 years for armed robbery. Both defendants appeal, and their appeals have been consolidated for review.

The following points are raised. Both defendants allege that the trial court erred when it denied their motions for severance. Defendant Cannon alleges that his rights under the confrontation clause of the sixth amendment were violated; and that his rights under the sixth and fourteenth amendments were violated because prospective jurors who would not impose the death penalty were excluded (U.S. Const. amends. VI, XIV.) Defendant Fort alleges: he was denied a fair trial because a prior consistent statement made by Cannon was used as evidence against him; the trial court erred in refusing to tender jury instructions on voluntary manslaughter; the misconduct by Cannon's counsel required a new trial; and his sentences were improper.

At the time of the incident, the victim, Robert Whitaker, lived with his brother George and George's girlfriend, Debra Cannon. Debra is the sister of defendant Terry Cannon. In 1980, George and Debra had a child, her second. Debra's first child was fathered by defendant Fort in 1971.

During the summer of 1980, defendants began to visit Debra at the Whitaker residence. Defendant Fort and Robert Whitaker usually argued, and on one occasion, Robert called the police to get Fort out of the house. Debra and George also argued and occasionally exchanged blows.

During the middle of December, George ordered Debra to move out of the house. She left without many of her personal effects. Debra was the subject of an arrest warrant, and she was arrested on December 16, 1980. Debra later learned that George cooperated with the police. Later that day, Robert called Cecilia Cannon, Debra's and Terry's sister, and informed her of the arrest. Terry went to the Whitaker home and took Debra's older child, defendant Fort's daughter, back to

his apartment, which he shared with Carol Johnson. That night, Terry visited Debra in the lock-up. She told Terry that he was to remove her personal property from the Whitaker residence. They also discussed raising money for bail.

The next day, December 17, defendant Fort visited Cannon. Fort was upset that Debra was still in jail. That afternoon, defendants went to the Whitaker home and retrieved Debra's daughter's clothes. Defendants also took a camera, a radio, and some cash from a cabinet. After returning to Cannon's apartment, defendants began drinking and decided that they would return to the Whitaker home, take more property, and sell it so that they could raise Debra's bail money. They left at about 8 p.m.

Defendants parked in the alley behind the house and entered through the front door. According to Cannon, Robert Whitaker had been drinking, was home alone, and was hostile to them when defendants entered. Robert carried an object that resembled a piece of pipe or heavy stick in his hand as protection. Cannon went upstairs, gathered some more of his niece's things, and began to rifle through George's dresser.

What happened next is disputed. Cannon testified that Robert came upstairs, started yelling, and began beating him with the object. Cannon defended himself, hit Robert, and knocked him down against a radiator. Fort came upstairs and stabbed Robert with a knife that Fort had found in the kitchen.

Defendant Fort stated that after Robert went upstairs, he heard drawers being thrown around and heard Cannon say, "[D]on't nobody do this to my sister, hurt my sister." Fort went upstairs and saw Robert lying against the radiator with blood on him. Cannon said to Fort, "What the hell are you looking at?" Defendants then took some property, including a portable television set, a stereo, two clock radios, an electric razor, and a bag full of pennies. They loaded the car and returned to Cannon's apartment.

According to Cannon's girlfriend, Carol Johnson, defendants returned at about 9:30 p.m. Cannon brought in the television set. Outside Fort's presence, Cannon told Johnson that Fort had killed Robert. Later, Fort said that "Debra should be grateful" for what they had done for her. Johnson also stated that she saw blood on Fort's hands. Cannon told Fort, "You didn't have to stab him," to which Fort replied, "You shouldn't have stopped me from stabbing him." At about 10 p.m., Fort returned to his residence, taking the stereo with him.

When George Whitaker returned home from work on December

17, 1980, he found his home ransacked and his brother murdered. George called the police and told them of the trouble that he had been having with Terry and Debra Cannon. George accompanied the police to Charlene Cannon's house, who directed them to Cannon's apartment. Cannon was arrested, advised of his rights, and taken to Area One Violent Crimes. At about 1:30 a.m., Cannon made a statement that implicated Fort. Two hours later, Cannon made another statement that corroborated the first. At about 7:50 a.m., Cannon gave a third statement that implicated Fort. This was reduced to writing and signed by Cannon.

Defendant Fort was arrested at about 6:15 a.m. Later that day, he gave a statement that implicated defendant Cannon. The statement was reduced to writing and signed by Fort.

Defendants were indicted. Before trial, they moved to suppress their statements and for severance. The court denied the motions. A jury returned guilty verdicts. Fort was sentenced to 80 years for murder and 60 years for armed robbery. Cannon was sentenced to 30 years for murder and 10 years for armed robbery. Both appeal.

I

Both defendants argue that the trial court erred in denying their motions for severance. At the hearing, counsel for Fort urged the court to grant severance because of information that he had obtained and set out in his affidavit in support of severance:

"I have talked to [Cannon's attorney] repeatedly about this case and he has informed me on a number of occasions [that] Mr. Cannon will testify in the case and that when Mr. Cannon testifies in this case, he will say that Mr. Fort performed the acts which caused the death of Mr. Whitaker, that Mr. Fort performed those acts by himself, that Mr. Cannon attempted to stop Mr. Fort from killing Mr. Whitaker, that Mr. Cannon was acting under threats of force and compulsion directed at him by Mr. Fort.

I believe that this is an antagonistic defense, Judge.
       * * *

I think that it would be grossly unfair to require me to not only having to defend against the very serious charge in this indictment brought by the State, but also at the same time defend against my co-counsel and the co-defendant in this case."

The court denied defendants' motions, ruling that "we can find proper limiting instructions which will safeguard the rights of both defendants." The court's ruling was error.

■ The rules governing severance are summarized in our supreme court's most recent severance case, *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349. Generally, a defendant does not have a right to severance because he is charged in the same indictment for crimes that arise from the same circumstances. Defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial. A defendant who wants severance may file a pretrial motion. (Ill. Rev. Stat. 1985, ch. 38, par. 114—8.) However, the "[m]ere apprehensions of prejudice are not enough. The motion must state how the defendant would be prejudiced by a joint trial. [Citations.] The decision whether to grant the motion is discretionary with the trial judge, and will not be reversed absent an abuse of discretion. [Citations.]" *People v. Bean* (1985), 109 Ill. 2d 80, 92-93, 485 N.E.2d 349.

■ Two sources of potential prejudice are likely to require a new trial. The first is the sixth amendment right to confrontation, which can be cured either by severance or the removal of all inferences to the defendant. The second source—that of antagonistic defenses—remains, however, and Illinois courts have recognized that when codefendants' defenses are so antagonistic that one codefendant cannot receive a fair trial, then severance is required. "Actual hostility" is needed. *People v. Bean* (1985), 109 Ill. 2d 80, 93, 485 N.E.2d 349.

In *Bean*, defendant Bean and codefendant Robert Byron were tried together for a variety of crimes connected with a death. Defendant moved for severance, which was denied. In his opening statement, counsel for Byron repeatedly referred to defendant. Counsel stated, "Bob Byron is going to take the witness stand. He is going to testify. Because an innocent man can't wait to tell his story. And a guilty man will never take the stand." (*People v. Bean* (1985), 109 Ill. 2d 80, 87, 485 N.E.2d 349.) Counsel's attacks continued during cross-examination and closing argument as well.

Our supreme court held that the trial court's refusal to grant defendant's motion for severance was error, and the cause was remanded for a new trial. The court reasoned that, like *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969, and *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839, the *Bean* case "became more of a contest between the defendants than between the State and an individual defendant," which the court called an "unacceptable situation." *People v. Bean* (1985), 109 Ill. 2d 80, 94, 485 N.E.2d 349.

■ Similarly, the trial court in this case abused its discretion in refusing defendants' motion for severance. Cannon's defense was clearly antagonistic to that of Fort's. Two of the State's witnesses,

Detective Patrick Carroll and Carol Johnson, testified about statements made by Cannon that implicated Fort as the sole murderer. Cannon himself also testified to that effect. Defendant Fort, then, faced the untenable position of defending himself against both the State and codefendant Cannon.

The State seeks to analogize this case to *People v. Cole* (1985), 131 Ill. App. 3d 36, 475 N.E.2d 620, *appeal denied* (1985), 106 Ill. 2d 556, and *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461. Both of those cases are distinguishable. In *Cole*, we ruled that the court properly denied severance because "neither [defendant] accused the other of committing murder." (*People v. Cole* (1985), 131 Ill. App. 3d 36, 42, 475 N.E.2d 620.) Here, each defendant accused the other of wielding the fatal knife. Similarly, *Lee* is not applicable because defendant there made only general assertions of prejudice. Our supreme court noted that the trial court "was not informed of what the substance of such testimony would be." (*People v. Lee* (1981), 87 Ill. 2d 182, 185, 429 N.E.2d 461.) In this case, as we have pointed out above, counsel for Fort gave a detailed account of what Cannon's testimony was going to be—that he would state that Fort alone killed Whitaker, that Cannon tried to stop him, and that Cannon cooperated only because he was acting under threats of force and compulsion.

The State also alleged that the court's ruling was proper because defendant's statements were "interlocking confessions." Interlocking confessions need not be identical. (*People v. Sanders* (1981), 103 Ill. App. 3d 700, 706, 431 N.E.2d 1145, *cert. denied* (1982), 459 U.S. 871, 74 L. Ed. 2d 131, 103 S. Ct. 157.) In defining antagonistic defenses, we said that "[t]here must be a true conflict; such as *** where each defendant condemns the other and declares the other will testify to facts exculpatory to himself and incriminating to the other." (*People v. Guyon* (1983), 117 Ill. App. 3d 522, 531, 453 N.E.2d 849.) Here, Cannon, in both his statement and on the stand, stated that he saw Fort stab Whitaker and that Cannon tried to stop him. His defense was clearly antagonistic to that of his codefendant's.

The State also argues that the trial court's ruling was proper because each defendant was found guilty based on an accountability theory. Under our accountability statute, one is legally responsible for the acts of another if he aids or attempts to aid another in the planning or commission of an offense. (Ill. Rev. Stat. 1985, ch. 38, par. 5—2.) This argument, however, is irrelevant, for a defendant can be convicted on an accountability theory although his trial has been severed. (See *People v. Cleveland* (1986), 140 Ill. App. 3d 462, 463-64, 488 N.E.2d 1276.) The State's argument does not address the propri-

ety of the severance ruling. Similarly, the State's claim that severance was unnecessary because the stolen property established defendant's guilt independently from any statement is also irrelevant because by itself it does not establish murder.

We find this case to be factually close to *People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969. There, defendant gave his codefendant a knife that the codefendant used in a murder. Each defendant gave a statement accusing the other of stabbing the victim. The supreme court ruled that defendant's motion for severance should have been granted: "When codefendants have each made statements implicating the other but professing their own innocence, it is almost inevitable that their lines of defense at trial will become inconsistent and antagonistic and severance is necessary to forestall that result and ensure a fair trial." 102 Ill. 2d 533, 544, 468 N.E.2d 969.

In this case, defendants were forced to defend themselves from each other as well as the State. For this reason, the court abused its discretion in denying their motions for severance, and the cause must be remanded for a new trial.

## II

Defendant Cannon claims that his right to cross-examine under the confrontation clause of the sixth amendment was violated because the State used defendant Fort's statement against him, even though Fort himself did not take the stand. We agree.

The confrontation clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." (U.S. Const., amend. VI.) In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the United States Supreme Court reversed a robbery conviction of one who had been implicated in a crime by his codefendant's extrajudicial confession. Because the codefendant did not take the stand, the court held that the admission of the confession deprived defendant of his rights under the confrontation clause. (391 U.S. 123, 126, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1620, 1622.) An exception has been carved out in cases where the defendant himself has confessed and his confession "interlocks" with and supports the confession of his codefendant. (*Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132.) The confessions in this case are not "interlocking." (See part I above.)

A recent decision by the United States Supreme Court supports defendant's position. (*Lee v. Illinois* (1986), 476 U.S. ___, 90 L. Ed. 2d 514, 106 S. Ct. 2056.) In *Lee*, defendant and codefendant Thomas

were taken into custody. Lee's account was that the behavior of the victims provoked Thomas into beginning his attack on one of the victims. Codefendant Thomas' statement, however, revealed that he and Lee had previously discussed killing one of the victims. This statement suggested a premeditated plan to kill. During the trial, the prosecutor repeatedly used Thomas' statement as substantive evidence against Lee. Thomas did not testify. The Supreme Court reversed the conviction, holding that the statement was too "unreliable" to be admitted as substantive evidence. *Lee v. Illinois* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 514, 526, 106 S. Ct. 2056, 2062.

The court noted that the "Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." (*Lee v. Illinois* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 514, 526, 106 S. Ct. 2056, 2062.) The *Lee* case documented a reality of criminal law, "namely that once partners in a crime recognize that the 'jig is up,' they tend to lose any identity of interest and immediately become antagonists, rather than accomplices." 476 U.S. ___, ___, 90 L. Ed. 2d 514, 528, 106 S. Ct. 2056, 2064.

In addressing the State's argument that the statements were "interlocking" on some points, the court stated that "a confession is not necessarily rendered reliable simply because some of the facts it contains 'interlock' with the facts in the defendant's statement. [Citation.] The true danger inherent in this type of hearsay is, in fact, its selective reliability." *Lee v. Illinois* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 514, 529, 106 S. Ct. 2056, 2064.

■ The facts and reasoning of the *Lee* decision are applicable here. Defendant Fort's statement that implicated Cannon was used against Cannon as substantive evidence. Fort, however, did not testify, depriving Cannon of his opportunity to cross-examine Fort, which rendered Fort's statements too unreliable to be admitted. As a result, Cannon's rights under the sixth amendment were violated, and his conviction must be reversed for a new trial.

## III

■ Defendant Cannon also claims that his rights under the sixth and fourteenth amendments were violated because veniremen who stated that they would not impose the death penalty were excluded from the jury. Since this case was argued, however, the Supreme Court has decided that the Constitution does not prohibit the removal of prospective jurors who are opposed to the death penalty. (*Lockhart v. McCree* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 137, 147, 106 S. Ct.

1758, 1764.) The Illinois Supreme Court has also consistently rejected this argument. *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

## IV

Defendant Fort claims that the trial court improperly allowed Carol Johnson to testify to the fact that defendant Cannon made a prior consistent statement that corroborated his trial testimony. Over defendant's objections, the court allowed the following testimony:

"Q. Would you tell the jury what you said to Terry [Cannon] and what he said to you?

A. I asked him what happened and he told me that he thought that Robert Whitaker was dead.

Q. What did you say then?

A. I told him that I didn't believe it and he told me that, um, he had beat up Robert Whitaker and Kaiser [Fort] had stabbed him."

Johnson's testimony was consistent with Cannon's, who took the stand later in his own defense and stated that he saw Fort stab Whitaker. Cannon testified, "I say Carol, he stabbed—we went over there and he stabbed him, and she said what you talking about, I say Fort stabbed Robert ***."

■■ The court erred in permitting Johnson to testify about her conversation with Cannon. Generally, a prior consistent statement is inadmissible unless one charges that the witness' statement is a fabrication. (*Lyon v. Oliver* (1925), 316 Ill. 292, 303, 147 N.E. 251.) This rule was recently quoted with approval in *People v. Emerson* (1983), 97 Ill. 2d 487, 501, 455 N.E.2d 41. In this case, Johnson's testimony impermissibly bolstered Cannon's testimony and aided Cannon's defense—that Fort and not he had killed the victim. For this reason, and because the cases should have been severed, the conviction of Fort must be reversed, and the cause remanded for a new trial.

## V

■■ Defendant Fort also alleges that the trial court erred in refusing to tender to the jury instructions on voluntary manslaughter and justifiable homicide. (Illinois Pattern Jury Instructions, Criminal, Nos. 7.04, 25.06.) There was no error, however, for our review of the record reveals that these instructions are not supported by the evidence.

## VI

Defendant argues that the alleged misconduct of the State warrants a new trial. At the close of the State's case in chief, the court granted the State's motion to preclude any of defendant Cannon's witnesses from mentioning the fact that Fort had served time in prison. Defendant Cannon violated the motion, however, when he referred to Fort's previous incarceration when on the stand. The court immediately instructed the jury to disregard Cannon's answer. Later, during closing argument, counsel for Cannon referred obliquely to Fort's "background." Fort's objection was sustained, and the jury was instructed to disregard any comment that was not based on the evidence.

We find this case to be analogous to *People v. Cole* (1985), 131 Ill. App. 3d 36, 475 N.E.2d 620. There, we said that any error regarding the introduction of a prejudicial remark was cured with a proper admonishment to the jury, "a discretionary decision with which we agree in light of the other evidence establishing the guilt of both [defendants]." (131 Ill. App. 3d 36, 42, 475 N.E.2d 620.) Here, the improper remarks were immediately stricken from the record, and the court cautioned the jury to not rely on them. There was no error prejudicial enough to warrant a new trial on this ground.

## VII

Defendant Fort also argues that his extended-term sentences were improper because: (1) the court never specified the aggravating factor on which the sentences were based; and (2) an extended-term sentence can only be imposed for the more serious offense.

Our review shows that the trial court did not specify its reasons for imposing the extended-term sentences, in apparent violation of section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(c)). Our supreme court, however, has held that the requirement of the section, which provides that "the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination," is only discretionary, not mandatory. *People v. Davis* (1982), 93 Ill. 2d 155, 162, 442 N.E.2d 855.

Section 5—5—3.2 of the Uniform Code of Corrections sets out the factors to consider when imposing an extended-term sentence:

"(b) the following factors may be considered by the court as reasons for imposing an extended term sentence ***:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater

class felony, within 10 years ***;" Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(b)(1).

The record shows that defendant had been previously convicted for attempted murder, rape, robbery, and burglary. Because rape is at the least a Class X felony (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), defendant's conviction falls within the parameters outlined above. Thus, the extended-term sentence for murder was proper.

The extended-term sentence for armed robbery was improper, however, because section 5—8—2 of the Uniform Code of Corrections "mandates that an offender be given an extended-term sentence for only the most serious offense." *People v. Green* (1985), 136 Ill. App. 3d 361, 369, 483 N.E.2d 606, *appeal denied* (1986), 111 Ill. 2d 573.

Defendant also argues that his sentences should be reduced because they are disproportional. Considering our review of the sentences above, we need not address this contention. For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial consistent with this opinion.

Reversed and remanded.

STAMOS and SCARIANO, JJ., concur.