THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PAUL HARRIS, Defendant-Appellant.

First District (3rd Division) No. 1—87—2087

Opinion filed May 16, 1990.

1004

Randolph N. Stone, Public Defender, of Chicago (Denise Avant, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Theodore Burtzos, Paul Gliatta, and Edward Pacer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Paul Harris, was found guilty of one count of delivery of a controlled substance, and his codefendant, Rena Wells, was found guilty of two counts of the same offense. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2).) Wells was sentenced to two concurrent terms of six years' imprisonment, and she appealed to the appellate court. (*People v. Wells* (1989), 184 Ill. App. 3d 925, 540 N.E.2d 1070.) Defendant was sentenced to six years and one month's imprisonment. He now appeals, contending that (1) the trial court abused its discretion in denying his motion for severance; (2) the State failed to prove that he was accountable beyond a reasonable doubt; and (3) the State made improper and prejudicial remarks during closing argument. We affirm.

Officer Andre Davis, an undercover agent for the Metropolitan Drug Enforcement Group (MEG), testified that he was involved in an undercover investigation at a forest preserve known as Kickapoo Woods. The purpose of this operation was to make a prearranged purchase of narcotics. On July 18, 1986, shortly after his arrival at the forest preserve, Officer Davis was met by codefendant Rena Wells, Harvey Harris and an unidentified male.

Officer Davis approached Harris' car, and Harris showed him two plastic bags on his lap, which had been covered by a newspaper. Harvey Harris told Officer Davis that the bags contained cocaine. The officer opened one of the bags, field tested the contents, verified its contents as cocaine, and then gave Harvey Harris $3,600 of MEG's funds.

Harvey Harris handed the money to codefendant Wells, who counted the stacks of $100 bills. While Wells counted the money, Officer Davis field tested the other bag and verified that it also contained cocaine.

Later that day, at about 3 p.m., Officer Davis telephoned Harvey Harris and told him that he was interested in making an additional

purchase. Harvey Harris told the officer that he would meet him in the same place, in two weeks.

On July 30, 1986, Harvey Harris called Officer Davis and suggested that they meet on August 1, 1986, at 10 a.m. at the same forest preserve. Harris told the officer that he could then sell him eight ounces of cocaine.

On August 1, Officer Davis went to Kickapoo Woods with $14,000 of MEG money. At about 10:05 a.m., Harvey Harris pulled his car up next to the officer's. Codefendant Wells was seated in the front passenger seat, and defendant was in the rear passenger seat.

According to Officer Davis, Harris asked him if he had the money, to which he responded affirmatively. Officer Davis then approached Harris' car and, in exchange for the money, Harris told defendant to give the officer the bag. Defendant retrieved a bag, which had been next to him on the car seat, and handed it through the window to the officer. Officer Davis described the bag as a green shopping bag, which contained a plastic ziplock bag of cocaine.

Officer Davis returned to his car, where he tested the contents of the bag. While conducting the test, he noticed that Harvey Harris and defendant were standing by his car. After determining that the bag contained cocaine, the officer gave Harvey Harris $7,000. Harvey Harris, again, gave the money to Wells and requested that she count it.

While Wells was counting the money, Officer Davis activated an electronic arrest signal. Backup agents converged on the scene, and Officer Davis announced his office. Defendant ran around the car to the rear passenger door and attempted to remove a loaded revolver from the back seat of the automobile. The revolver was just to the left of where defendant had been seated in the car. Harvey Harris, Wells and defendant were subsequently arrested.

The State presented the additional testimony of Agents John McQuinn and Lemuel Hougues. Their testimony fairly corroborates that of Officer Davis. The parties stipulated that the packet given to Officer Davis on August 1 was tested and contained 209.29 grams of 66% pure cocaine.

Harvey Harris, who is defendant's uncle, was the sole defense witness. He testified that defendant lived with him and his wife in their home. On August 1, 1986, at about 9:30 a.m., he and defendant left the house, stopped to pick up Wells, and proceeded to Kickapoo Woods. According to Harris, neither Wells nor defendant asked, and he never told either of them, where they were going or why.

They met Officer Davis at the park. After parking his car beside

Officer Davis', Harris raised his hood because there was a little steam coming out from under it. Harris told defendant to pass him a little bag, and defendant handed it to him through the window. While Officer Davis checked the contents of the bag, he (Officer Davis) told Harris to check the amount of the money. Wells counted the money. Shortly thereafter, the other officers arrived on the scene. Harris also testified that he concealed the cocaine from both Wells and defendant.

Defendant was arrested and charged with one count of delivering a substance containing more than 30 grams of cocaine on August 1, 1986. Wells was arrested and charged with two counts of delivering a substance containing cocaine on July 18, and August 1, 1986. Harvey Harris was arrested and charged with three counts of delivering a substance containing cocaine on July 14, 18, and August 1, 1986. Harris entered a plea of guilty. Wells and defendant demanded jury trials.

Prior to trial, defendant filed a motion to sever his case from that of Wells (Ill. Rev. Stat. 1987, ch. 38, par. 114—8). He argued that evidence of the July 18, 1986, transaction involving Wells, and not him, might prejudice the jury in determining his guilt in the August 1 transaction. The State filed a motion to consolidate the cases, arguing that the activities demonstrated a comprehensive scheme.

In denying defendant's motion to sever, the court stated that the jury would be given a limiting instruction that defendant was not involved in the July 18 transaction. At the close of the evidence, the jury found defendant guilty. Defendant now appeals.

Defendant first contends that the trial court abused its discretion in denying his motion for severance. He argues that given the overwhelming volume of evidence against Wells and the small amount of conflicting evidence against him, it was difficult for the jury to compartmentalize the evidence against the two and use it for its limited purpose.

■ It has long since been established that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Olinger* (1986), 112 Ill. 2d 324, 345, 493 N.E.2d 579; *People v. Lee* (1981), 87 Ill. 2d 182, 187, 429 N.E.2d 461, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.) A defendant who does not wish to be jointly tried has the right to file a pretrial motion for severance (Ill. Rev. Stat. 1987, ch. 38, par. 114—8); however, to sustain the motion, more is required than mere apprehensions of prejudice. (*Lee*, 87 Ill. 2d at 186.) By his motion, the defendant must state how he would be prejudiced by a joint trial. *People v. Braune* (1936), 363 Ill. 551, 554,

2 N.E.2d 839.

 Ruling on the motion requires that the trial court make a prediction about the likelihood of prejudice at trial, taking into account the papers presented, the arguments of counsel, and any other knowledge developed from the proceedings. (*People v. Collins* (1989), 186 Ill. App. 3d 35, 40, 541 N.E.2d 1308.) It is within the sound discretion of the trial court whether to grant the motion to sever, and absent an abuse, its decision will not be disturbed on review. *People v. Daugherty* (1984), 102 Ill. 2d 533, 541, 468 N.E.2d 969; *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.

 Traditionally in Illinois, trial courts grant motions for severance based on two common forms of prejudice. The first type occurs when a codefendant has made hearsay admissions which implicate the defendant. (*People v. Daugherty*, 102 Ill. 2d at 541; *People v. Fort* (1986), 147 Ill. App. 3d 14, 497 N.E.2d 416.) The defendant may be denied his constitutional privilege of confrontation if the codefendant's hearsay admission is admitted against him and the defendant is unable to cross-examine the codefendant because the latter does not testify. (See *People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461; see also *Bruton v. United States* (1968), 391 U.S. 123, 134 n.10, 20 L. Ed. 2d 476, 484 n.10, 88 S. Ct. 1620, 1626-27 n.10.) A second type of prejudice occurs when defenses of the various defendants are so antagonistic that a severance is imperative to assure a fair trial. See, *e.g.*, *People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349; *Lee*, 87 Ill. 2d 182, 429 N.E.2d 461; *Braune*, 363 Ill. 551, 2 N.E.2d 839.

Here, defendant has alleged neither of the traditional forms of prejudice; he has made only general assertions of prejudice. Relying on *United States v. Sampol* (D.C. Cir. 1980), 636 F.2d 621, he maintains that the overwhelming amount and venality of the evidence against his codefendant in and of itself warranted severance.

The State argues that the Illinois Supreme Court in *Byron* adopted the reasoning of *Sampol* as one part of a two-prong test. Thus, the State maintains that in addition to one of the commonly recognized forms of prejudice, a defendant needs also to demonstrate that he will be prejudiced by the nature and quantity of evidence presented. Since defendant has failed to satisfy this two-part test, severance was not required.

We disagree with the State's analysis. The *Byron* court stated that the Federal courts have recognized that disparity in " 'the quantity and type of evidence adduced against the co-defendants[] is a vital consideration in evaluating the necessity for severance.' " (*Byron*, 116

Ill. 2d at 93, quoting *United States v. Sampol* (D.C. Cir. 1980), 636 F.2d 621, 646.) The court then noted that an overwhelming volume of evidence was presented as to the defendant Bean only, and in view of the antagonism between the defendants, the court could not say that the jurors fairly applied the evidence to the respective defendants. *Bean*, 109 Ill. 2d at 93.

■ We do not read *Byron* as creating a two-prong test. Clearly, severance may be required where, even in the absence of an over- whelming amount of evidence, the defenses are antagonistic or the right to confrontation has been infringed. The quantity of, and the corrupt influence of, the evidence is but a factor to be considered in a severance determination. However, there may well be circumstances, as in *Sampol*, where this factor alone could be the basis upon which severance is granted. Any set of circumstances which deprives a defendant of a fair trial is sufficient to require severance. *Bean*, 109 Ill. 2d at 95.

Nonetheless, defendant's case is not helped by *Sampol*. In *Sam- pol*, the defendant was indicted on two counts of making false state- ments to a grand jury and one count of misprision of a felony. He was tried with two codefendants who were charged with, *inter alia*, con- spiracy to murder a former foreign official and murder by explosives. (*Sampol*, 636 F.2d at 642.) Actual testimony at trial created the false impression that the defendant was involved in the conspiracy to mur- der (636 F.2d at 644), and the bulk of the testimony concerned the crimes of conspiracy to assassinate and murder (636 F.2d at 647). The court noted that at one point during the trial, the confusion was so great that one of the witnesses, describing a meeting with one of the codefendants, named the particular codefendant, but pointed to the defendant. The court stated:

> "The amount and provocative nature of the evidence required to prove the charges against his co-defendants so exceeded and varied from that which was necessary or relevant to the charges against [the defendant] that it was unfair to him, and unrealistic to expect a jury not to be influenced by such extra- neous testimony in its assessment of his guilt upon the lesser charges for which he was tried." 636 F.2d at 647.

■ Such was not the case here. This was not a complicated case; there were a limited number of witnesses, and the facts were in no way confusing. We believe that the jury could properly compartmen- talize the evidence against defendant and the codefendant.

Further, we find nothing in the record to even suggest that the jury might have been given the erroneous impression that defendant

was involved in the July incident. We note that the trial judge, three times, admonished the jury, twice during the trial and once in its instructions, that defendant was not involved in the July delivery. We would be hard pressed to find prejudice here; thus, we conclude that the trial court did not abuse its discretion in denying defendant's motion.

In his reply brief, defendant attempts to analogize to *Bean*. There the defendant Bean and codefendant Byron were tried together for a variety of crimes connected with a death. (*Bean*, 109 Ill. 2d at 84.) The defendant's motion for severance was denied. (109 Ill. 2d at 87.) Counsel for the codefendant, while asserting his innocence, made incriminating statements about the defendant throughout the trial. 109 Ill. 2d at 95.

*Bean* is inapposite. The record before us is devoid of any evidence which even remotely suggests that the codefendant accused defendant of the delivery while professing her own innocence. The antagonistic defense, present in *Bean*, simply did not occur here.

■■ ■ Defendant next contends that the State failed to prove beyond a reasonable doubt that he was accountable for Harvey Harris' delivery of a controlled substance. He argues that the evidence against him was irrelevant and contradictory. Precluding this evidence, the only evidence of accountability would have been his presence at the scene. Since mere presence is insufficient to support a finding of accountability, the verdict should be reversed. *People v. Marquis* (1974), 24 Ill. App. 3d 653, 321 N.E.2d 480.

Under our accountability statute, one is legally responsible for the acts of another if (1) he elicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation took place before or during the commission of the offense; and (3) there was a concurrent, specific intent to promote or facilitate the commission of the offense. (Ill. Rev. Stat. 1987, ch. 38, par. 5—2.) "[O]ne may aid or abet without actively participating by an overt act; and if the evidence shows that the defendant was present at the commission of a crime without disapproving or opposing it, it is permissible for the trier of fact to consider this conduct, in connection with other circumstances, so as to support the conclusion that the defendant assented to the commission of a crime, lending to it his countenance and approval, and was thereby aiding and abetting therein." *People v. Burke* (1985), 136 Ill. App. 3d 593, 601, 483 N.E.2d 674.

■■ When presented with a challenge to the sufficiency to the evidence, the relevant inquiry is whether the evidence, viewed in a light

most favorable to the State, would support any rational trier of fact in finding that the essential elements of the crimes had been proved beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267.

■ Defendant makes much of the fact that he was not able to see inside the bag that he handed to Officer Davis. Therefore, he argues, he could not have been assisting in the delivery. This reasoning does not necessarily follow. The fact that he might not have been able to see inside does not serve to negate the possibility of his prior knowledge of the contents of the bag. Further, the jury was not bound to believe the testimony of Harris that defendant did not know the purpose of the meeting with Officer Davis. *People v. Hanna* (1983), 120 Ill. App. 3d 602, 613, 457 N.E.2d 1352.

■■ Defendant next points to the fact that while Officer Davis testified at trial about defendant going to the car to get the gun, that fact was included in neither his police report, nor in his testimony at the preliminary hearing. As defendant correctly notes, the general rule is that it is for the jury, as trier of fact, to resolve any factual disputes, to assess the credibility of the witnesses, and to determine the sufficiency of the evidence for a verdict of guilty. (*People v. Ellis* (1978), 74 Ill. 2d 489, 496, 384 N.E.2d 331.) This court will not substitute its judgment unless the evidence is so unsatisfactory or improbable that a reasonable doubt remains as to defendant's guilt. *Ellis*, 74 Ill. 2d at 496.

In his testimony, Officer Davis admitted that the facts concerning defendant running to the car to get the gun had been omitted; however, he further stated that the report was no more than a summary of the events. We note that the police report did include the fact that the gun was seized from the rear passenger seat of the car, and there is no dispute that defendant had been seated there. Here, the jury apparently found the officer's explanation on the omitted fact to be satisfactory. We cannot disagree.

■ We believe that defendant's conduct could support a finding of accountability. In addition to his presence at the scene, there was evidence that he unquestioningly handed the packaged cocaine to the undercover agent, witnessed the exchange of money for the package, stood, without protest, outside the officer's car as the officer tested the substance, then, upon being made aware that the agent had signalled for his arrest, ran to retrieve a gun. We do not find this evidence to be so improbable as to create a reasonable doubt. The verdict here is sufficiently supported by the evidence.

██ Defendant's third and final contention is that his conviction should be reversed because of improper closing argument made by the State. During cross-examination, Harvey Harris stated that he did not tell anyone of defendant's innocence until the day of defendant's trial. On redirect examination, he stated that he asserted his fifth amendment right against self-incrimination and remained silent about defendant's innocence on the advice of counsel. Defendant maintains that since Harris' credibility was crucial to his defense he was substantially prejudiced by the State's comments.

During closing argument, the State made the following remarks:

> "Harvey Harris, the one they desperately want you to believe was arrested on August 1 and yesterday for the first time, tells you what happened the day after his arrest. He does not plead and say they didn't have anything to do with it. He waits ten months."

Defendant's objection to the remarks was overruled.

The State asserts, and defendant admits, that the claimed prejudicial statements were not included in his post-trial motion as grounds for a new trial. As such, the argument has been waived for purposes of our review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Alternatively, the State maintains that the comments were not in reference to Harris' post-arrest silence as it pertained to his (Harvey Harris') guilt or innocence, but only as it related to defendant's alibi.

██ Notwithstanding the fact that the issue has been waived, defendant urges that since there was an objection made at trial, the evidence against him was not overwhelming, and a right against self-incrimination was involved, we should consider the comment under the plain error doctrine.

In *People v. Godsey* (1978), 74 Ill. 2d 64, 383 N.E.2d 988, a case upon which defendant relies, the court stated that before a witness may be questioned about his silence, a proper foundation indicating an inconsistency between such silence and the testimony at trial must be laid. The refusal of a witness to testify or speak because of the exercise of self-incrimination rights may lead a jury to imply that the witness was engaged in illegal activities, which can all too easily be transferred over to the defendant. (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975, 983.) Here, the State did not demonstrate any inconsistency between the witness' trial testimony and his silence; thus, the admission of such testimony was an evidentiary error.

██ However, before such error can be the basis for reversal, the

defendant must show that it could have contributed to his conviction. (*Godsey*, 74 Ill. 2d 64, 383 N.E.2d 988; *People v. Sullivan* (1978), 72 Ill. 2d 36, 44, 377 N.E.2d 17.) The proper standard of review for a finding of plain error is whether the evidence of defendant's guilt is so closely balanced and the alleged errors of such magnitude that they denied the defendant a fair trial. *People v. Boclair* (1989), 129 Ill. 2d 458, 476, 544 N.E.2d 715; *People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.

We do not believe that defendant was substantially prejudiced by the evidence of Harris' silence. Even absent this evidence, there was sufficient other competent evidence upon which conviction could have been based. Moreover, Harris' credibility had already been impeached by his testimony on direct examination of his prior conviction for delivery of drugs. Thus, we conclude that the error was harmless beyond a reasonable doubt.

For the foregoing reasons we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and WHITE, J., concur.