THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DENNIS KNELLER, Defendant-Appellant.

Second District No. 2—89—0834

Opinion filed October 3, 1991.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Robert C. Cooper, Michael J. Pelletier, and Ann Meyer, all of State Appellate Defender's Office, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, the defendant, Dennis Kneller, was found guilty but mentally ill of the offenses of burglary and criminal damage to property. He was sentenced to concurrent terms of 10 years for burglary and 5 years for criminal damage to property. Defendant appeals, raising the following issues: whether he was denied a fair trial due to a comment by the prosecutor during closing arguments; and whether he was denied his constitutional right to due process because the guilty but mentally ill (GBMI) instruction was given to the jury. We affirm.

The evidence at trial revealed that on December 16, 1988, at approximately 3 a.m., Rockford police responded to a possible burglary in process call. Upon arriving at the scene, police discovered the defendant in his landlord's garage, holding a crowbar. The windows of the landlord's 1970 Cadillac automobile had been broken. According to one of the arresting officers, defendant appeared to be intoxicated at the time of his arrest. Defendant also acted strangely, *i.e.*, he kept re-

peating himself, stating he had not been in the garage and made non-sensical statements which were unrelated to what was happening.

Dr. Donald Pearson, a registered psychologist, appointed by the court to examine defendant, testified on his behalf. He conducted an examination of the defendant in two sessions which lasted a total of five hours on March 16, 1989. The examination consisted of gathering information from the defendant as to his background and the administration of various tests. In addition, Dr. Pearson also reviewed records of defendant's prior hospitalizations, as well as his criminal history.

According to Dr. Pearson, defendant related that he had been separated from his natural mother at an early age and was later adopted. Prior to the adoption, he had been in foster homes; between the ages of three and four, he had been sexually abused. Dr. Pearson described post-traumatic stress disorder, which is classified as a mental disorder or defect which can be triggered by sexual abuse. Among the symptoms of post-traumatic stress disorder are difficulty sleeping, problems with identity, proclivity to explosive reactions and detachment from other people. From a review of defendant's history, Dr. Pearson believed that defendant was suffering from post-traumatic stress disorder at the time he committed the instant offenses.

Dr. Pearson then testified as to the various tests he administered to the defendant and the results of those tests. The doctor noted that defendant was able to communicate well but that that did not mean that he was not suffering from a severe medical disorder. Dr. Pearson concluded that the defendant was not malingering but showed some qualities indicating he was histrionic. He noted that, while he had found the defendant fit to stand trial although he was suffering from mental disorders, defendant could still have been legally insane at the time of the instant offense.

Dr. Pearson opined that at the time of the instant offense defendant was suffering from an alcoholic substance dependency, an organic effective disorder, as well as a mixed personality disorder, which in this case consisted of antisocial, histrionic and passive-aggressive traits. It was Dr. Pearson's impression that there was a very strong likelihood that the defendant had undergone a post-traumatic stress disorder. One of the manifestations caused by defendant's organic effective disorder was an amnesiac reaction. The organic effective disorder is characterized by a deterioration of behavior, or, as in defendant's case, through the injection of a toxic substance, such as alcohol. Moreover, defendant's use of alcohol aggravated his negative personality traits.

Dr. Pearson concluded that at the time he committed the instant offense defendant was not able to appreciate the consequences of his actions or the behavior he was displaying or to control them.

On cross-examination, Dr. Pearson testified that the best way to determine an organic disorder was through a physical examination or a lab test, none of which he performed on the defendant. The basis or foundation for his opinion was defendant's alcohol use. There was no independent verification of defendant's statements as to his use of alcohol. While defendant told Dr. Pearson he was never married, in fact, he was divorced and had several children both in and out of wedlock. According to Dr. Pearson, this would be a reflection of organic deterioration which is similar to what is seen in Alzheimer sufferers and reflects the organic disorder condition defendant suffered from when he committed the instant offenses. Dr. Pearson was of the opinion that, absent the organic disorder, defendant would not have reacted by damaging his landlord's property. He admitted, however, that there were no physical or psychological test results corroborating his finding and that he was the first to make this diagnosis.

Dr. Fredrick McNelly, a registered clinical psychologist, testified in rebuttal for the State. He had conducted examinations of the defendant in December 1983, October 1985 and September 1987.

Dr. McNelly testified that in October 1985 he administered a Graham Kindell test to the defendant which was designed to determine the existence of an organic problem, *i.e.*, some type of brain damage or disfunction. Defendant performed the test perfectly twice, and in conjunction with other tests given and other records, Dr. McNelly concluded that there were no signs of psychoneurological or neurological damage or disfunction.

Dr. McNelly again saw the defendant in September 1987. He conducted two lengthy clinical interviews and reviewed test records from defendant's last hospitalization at Singer Zone Center in 1986. None of the tests indicated an organic problem. None of the reports from the various psychologists and psychiatrists indicated any organic problems in the defendant.

According to Dr. McNelly, consumption of alcohol over the length of time can cause an organic problem. However, it would take many years of very significant substance abuse beyond the years of tests with normal results before one could expect organic damage. Dr. McNelly found defendant to be suffering from substance abuse, primarily drugs but also alcohol. Even given the substance abuse evident in 1987, as of that time, Dr. McNelly could find no evidence of organic damage.

On cross-examination, Dr. McNelly testified that he noticed a marked decrease in defendant's overall level of functioning between 1983 and 1985. He acknowledged that mental disorders "go up and down." He also acknowledged that alcohol abuse can have a deteriorating function over the brain.

On redirect examination, Dr. McNelly testified that defendant's episodes of disorientation had nothing to do with post-traumatic stress syndrome. Dr. McNelly did not believe that defendant was suffering from post-traumatic stress syndrome, nor did any of the reports he had reviewed so indicate.

During closing arguments, the following colloquy occurred:

"MR. LOWRY (assistant State's Attorney): Heard from Dr. McNelly, 1987, He examined the defendant. And he did what's called a Graham Kindell test to determine if there is an organic problem. No evidence according to Dr. McNelly. No evidence of an organic problem. And Dr. McNelly wasn't alone.

If you'll recall, Dr. McNelly, in making his ultimate determination of no evidence of organic problem, he reviewed reports. Reports from Singer in 1986 and other psychological reports. No evidence of an organic problem. None. And the interesting point I want to make is that Singer, ladies and gentlemen, 1986, there is [sic] medical doctors. They conducted—

MR. LIGHT (defense counsel): Judge, object. There is no testimony as to that. None.

MR. LOWRY: Judge, there was testimony from Dr. McNelly that doctors at Singer conducted physical examinations finding no organic problem.

THE COURT: Overruled.

MR. LOWRY: It's an important point. I want you to remember, ladies and gentlemen, that Singer is where there are psychiatrists, medical doctors. They conducted a physical test—

MR. LIGHT: Object. Objection. No testimony as to that.

THE COURT: Mr. Lowry.

MR. LOWRY: Judge, there was. The jury can decide for themselves what the evidence was in the case. There was testimony to that.

THE COURT: Overruled. Jury will have to recall the evidence.

MR. LOWRY: Medical evidence. Medical doctors. Psychiatrists as well as psychologists found no evidence of an organic problem. And that's an important point. Because they did a physical examination.

Now, Dr. Pearson had to admit on cross-examination, he had to, all of these doctors, all these doctors who examined the defendant over the years, he's the first and only doctor to find an organic problem."

Following closing arguments, the jury was instructed on the affirmative defense of insanity. Over defense counsel's objection, the jury was also instructed on the law of guilty but mentally ill. The jury returned verdicts finding defendant guilty but mentally ill of burglary and criminal damage to property over $300. Defendant was sentenced as stated above, and this appeal followed.

Defendant contends that he was deprived of a fair trial when the prosecutor urged the jury to consider substantive diagnoses of non-testifying doctors, which were admissible for the limited purpose of explaining Dr. McNelly's opinion.

The State points out and defendant concedes that defendant failed to raise this error in his post-trial motion and, therefore, it should be waived. (See *People v. Enoch* (1988), 122 Ill. 2d 176.) Defendant urges this court to review the error under an exception to the rule in *Enoch*, namely, the existence of plain error since the evidence on the issue of defendant's sanity was closely balanced. (*People v. Enoch* (1988), 122 Ill. 2d 176; 134 Ill. 2d R. 615(a).) While we agree that the evidence was closely balanced on the insanity issue, we nevertheless conclude that no reversible error occurred for the reasons set forth below.

In *People v. Eckhardt* (1987), 156 Ill. App. 3d 1077, this court held that assessments of a defendant's mental condition which are not supported by testimony are inadmissible for the truth of such assessments and may be considered only to the extent they formed the basis for the opinion of the testifying doctors. (*Eckhardt*, 156 Ill. App. 3d at 1091.) In *People v. Anderson* (1986), 113 Ill. 2d 1, our supreme court explained that such assessments were not hearsay since they were admitted for the limited purpose of explaining the basis for the expert opinion. The supreme court then stated:

"It is true that an uninformed jury could misuse this type of information as substantive proof of insanity. We do not believe that this possibility is a sufficient reason to deny the jury an adequate basis for assessing the weight and credibility of expert opinion. A limiting instruction, advising the jury to consider the underlying statements only to evaluate the basis of the expert's opinion, should forestall any such misuse." *Anderson*, 113 Ill. 2d at 12.

■■ At no time did defense counsel request a limiting instruction. Moreover, at the time of the complained-of comment, defense counsel objected on the basis that there was no testimony to that effect. When the basis for an objection was not raised at trial but for the first time on appeal, it is waived. (*People v. Rogers* (1989), 178 Ill. App. 3d 650, 660.) It is true that in closing argument the prosecutor did argue the medical evidence substantially which evidence was, in effect, hearsay. Where hearsay evidence is admitted without objection it is to be considered and given its natural probative effect. *People v. Akis* (1976), 63 Ill. 2d 296, 299.

Even without the complained-of comment by the prosecutor, there was sufficient evidence in the record to support the jury's decision to find the testimony of Dr. McNelly, who had examined defendant over a period of years, more credible than that of Dr. Pearson, who had seen the defendant on only one occasion, albeit for five hours.

We conclude, therefore, that any error in connection with the prosecutor's argument was waived or, at worst, was harmless error.

Defendant also contends that he was denied his constitutional right to due process of law because the guilty but mentally ill verdict injected irrelevant issues into the determination of guilt or innocence. Defendant correctly notes that in *People v. Fierer* (1988), 124 Ill. 2d 176, our supreme court when faced with the identical question found it unnecessary to resolve the question in light of errors committed with regard to the jury instruction on GBMI and insanity verdicts. The State maintains that the fact that the *Fierer* court did not address the issue implies that the court was not persuaded by the assertions of unconstitutionality.

Although the *Fierer* court did not decide this issue, other Illinois courts have addressed the identical issue and decided it contrary to the defendant's position. In *People v. Seaman* (1990), 203 Ill. App. 3d 871, the Appellate Court, Fifth District, stated:

> "Defendant argues that the GBMI verdict, on its face, is an unconstitutional denial of due process because it interjects irrelevant and misleading elements of thought into the determination of guilt or innocence, and in its application detracts from logical, reasoned, and fair determination on the basic issue of guilt or innocence. These same arguments were made by the defendant and rejected by the court in *People v. DeWit* (1984), 123 Ill. App. 3d 723, 463 N.E.2d 742. As the court noted in *DeWit*, '[w]e are not persuaded that the possibility of a compromise verdict is a constitutional infirmity where the jury still must make a determination in the first instance between whether a

defendant is guilty or legally insane based upon the evidence at trial.' [Citation.] The court further found that section 115—4(j) [GBMI provision] expresses its requirements in simple and clear language and that the definition of mental illness provides meaningful standards for the jury to make the required findings." *Seaman*, 203 Ill. App. 3d at 887.

■ Defendant relies on several out-of-State cases, as well as secondary source material. One district of the appellate court is not in all instances bound to follow the decisions of other districts. However, there are compelling reasons to do so unless a district has made a determination of its own contrary to that of another district or there is a split of authority among the districts. (*People v. Ward* (1989), 192 Ill. App. 3d 544, 554.) This court has not determined that the GBMI verdict is unconstitutional, and, therefore, we choose to be guided by the prior appellate decisions in *People v. Seaman* and *People v. DeWit*.

We conclude, therefore, that the GBMI verdict is not unconstitutional on the basis that it interjects irrelevant issues into the determination of guilt or innocence.

The judgment of the circuit court is affirmed.

Affirmed.

INGLIS and GEIGER, JJ., concur.