(No. 83527.—

(No. 83641.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES LANTZ, Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERIC J. ROBLES, Appellee.

*Opinion filed April 22, 1999.*

RATHJE, J., took no part.
HEIPLE, J., dissenting.

John C. Greenlees, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Barbara A. Preiner, Solicitor General, and William L. Browers and Bridget L. Field, Assistant Attorneys General, of Chicago, of counsel), for the People.

James E. Ryan, Attorney General, of Springfield, and Joseph E. Birkett, State's Attorney, of Wheaton (Barbara A. Preiner, Solicitor General, William L. Browers and Bridget L. Field, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Cynthia N. Schneider, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Kathleen L. Roach, Susan A. Weber, Hille R. Sheppard and Michael E. McCann, of Sidley & Austin, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

The common question in these consolidated appeals involves the constitutionality of the guilty but mentally ill (GBMI) statute, section 115—4(j) of the Code of Crim-

inal Procedure of 1963 (725 ILCS 5/115—4(j) (West 1994)). In cause No. 83527, the defendant, James Lantz, was charged in the circuit court of Lake County with first degree murder. After a jury trial, Lantz was found guilty but mentally ill of that offense and was sentenced to a term of 38 years' imprisonment. The appellate court affirmed Lantz's conviction and sentence in an unpublished order. No. 2—95—1569 (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). We allowed the defendant's petition for leave to appeal. 166 Ill. 2d R. 315(a). In cause No. 83641, the defendant, Eric J. Robles, was charged in the circuit court of Du Page County with the first degree murders of his parents and with the solicitation of their murders. A jury found Robles guilty but mentally ill of those offenses, and the trial judge sentenced Robles to a term of natural life imprisonment for the first degree murder convictions and to concurrent terms of 35 years' imprisonment for the solicitation convictions. The appellate court, with one justice dissenting, reversed the defendant's convictions and granted the defendant a new trial, finding the guilty but mentally ill statute unconstitutional. 288 Ill. App. 3d 935. Because the appellate court found the statute unconstitutional, the State's appeal from that decision is before us as a matter of right. 134 Ill. 2d R. 317. We consolidated the two cases for purposes of oral argument and disposition, and we now hold that the GBMI statute is constitutional.

The issues before us are fairly narrow, centering on the constitutionality of the GBMI statute, and much of the evidence in these cases is uncontested, so only an abbreviated recitation of the testimony is required; additional evidence will be provided as it becomes necessary.

## No. 83527

The defendant in No. 83527, James Lantz, stabbed his wife to death early in the morning on March 16, 1995, inflicting 68 separate wounds to her neck, chest, arms,

and hands. The defendant next obtained a can of gasoline from the garage and poured gasoline around the victim and in the living room. The defendant also severed natural gas lines connecting the stove and clothes dryer. The defendant then woke up his daughter, telling her to wake her brother and to leave the house because he was going to set it on fire. The defendant led the children from the house, saying repeatedly that "he was sorry but he had to do it," "she deserved it," and "she drove me to it." The defendant then set the family's house on fire. While the house was in flames, the defendant tried to reenter it several times, suffering burns to his feet, a leg, and face. When police arrived, defendant approached the officers with outstretched hands, as though he expected to be handcuffed. Police asked where the defendant's wife was, and the defendant replied, "I killed her." When firefighters asked the defendant about his wife, he answered, "She's dead." Without prompting, defendant told one officer who was guarding him that his wife spent the preceding night telling him he was going to hell and that he could not take it anymore. The defendant did not complain about his injuries, appeared to be dazed, and was nonresponsive to medical personnel.

At trial, the defense presented extensive evidence of the defendant's mental condition and history. In 1991, defendant went to a hospital emergency room complaining of fatigue and headaches. At that time, defendant had just quit drinking coffee and smoking. The treating physician, Dr. Antonio Lee, noted in the defendant's records that the defendant was nervous and had trouble sleeping. The defendant visited Dr. Lee in August 1991, complaining then of increased anxiety. Dr. Lee found that defendant was anxious about his employment situation but noted that defendant could not explain his concerns logically and concluded that they were groundless. Dr. Lee prescribed tranquilizers at the time. Dr. Lee saw de-

fendant again three months later. On that occasion, Dr. Lee noted that defendant's condition had not improved; believing defendant to be delusional, Dr. Lee advised him to see a psychiatrist.

The defendant saw different doctors at various times during the next several years. In general, they found defendant to be depressed and agitated, and they prescribed different drugs for him to take. On March 15, 1995, the day before the offense involved here, defendant interrupted a meeting at his workplace, believing that it was about him. Defendant's boss attempted to reassure the defendant that the discussion did not concern him and sent him home for the rest of the day. The defendant instead went to a nearby psychologist's office and made an appointment for that day. The defendant did not keep the appointment, however. The defendant next went to an office of the Lake County sheriff's department, where he asked whether his wife had served divorce papers on him. The defendant then went to his accountant's office, without an appointment, to discuss some unreported income from baby-sitting. The defendant returned to the accountant's office later that afternoon, again without an appointment. The accountant testified at trial that the defendant was anxious and "hyper." The defendant went home, where he argued with his wife, accusing her of conspiring with the accountant to have him committed. Early the next morning, the defendant committed the offense charged here.

While awaiting trial, the defendant was examined by two experts, Dr. Michael Gelbort, a clinical psychologist, and Dr. Donald Chapman, a psychiatrist, who later testified on the defendant's behalf. In formulating their opinions the defense experts tested the defendant and reviewed police reports, the defendant's medical records, and statements of various witnesses. Dr. Gelbort testified that the defendant was insane at the time of the offense.

He found the defendant to be suffering from a delusional syndrome and experiencing persecutory ideas. Dr. Gelbort also said that the defendant was showing evidence of a bipolar disease characterized by depression and hypermanic presentation. Dr. Chapman also believed that the defendant was insane at the time of the offense. Dr. Chapman concluded that the defendant was suffering from a bipolar disorder and was experiencing a psychotic episode with paranoid delusional features.

The defendant was also examined by the State's expert witness, Dr. Henry Lahmeyer, a psychiatrist. Relying on the same materials as the defense experts, Dr. Lahmeyer concluded that the defendant was not insane at the time of the murder.

At the close of evidence, the jury found the defendant guilty but mentally ill of first degree murder. The trial judge sentenced the defendant to 38 years' imprisonment for the offense. The appellate court affirmed the defendant's conviction and sentence in an unpublished order. No. 2—95—1569 (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)). The court concluded that the jury's finding of mental illness was not against the manifest weight of the evidence, that the defendant was not denied a fair trial by several instances of alleged trial error, and that the defendant's 38-year sentence for the offense was not excessive. We allowed the defendant's petition for leave to appeal (166 Ill. 2d R. 315(a)), and we later consolidated the cause with No. 83641, People v. Robles.

## No. 83641

In cause No. 83641, the defendant and a friend were arrested on April 17, 1993, after Elgin police officers found them near their parked car covered with what appeared to be a red substance. While being taken by ambulance to the hospital, the defendant was asked who should be notified of his injuries, and the defendant

replied, "I just killed my mom." Investigating officers found Mrs. Robles on the floor in the front room of the family's house; she had a deep cut in her throat. Mrs. Robles was taken to the hospital, and she died there several hours later. Officers found the body of Mr. Robles in a downstairs bathroom; he also had slash wounds in the neck.

At trial, the defendant did not challenge the evidence of his participation in the charged offenses, and contended instead that he was insane at the time. The principal witness for the defense was Ruth Kuncel, a clinical psychologist, who provided expert testimony on the defendant's mental condition. In formulating her opinion, Dr. Kuncel separately interviewed the defendant and the defendant's brother, and she reviewed relevant records in the case, including the defendant's medical and school records, reports prepared by the State's experts, police reports, and grand jury transcripts. Dr. Kuncel testified that the defendant had a significant personality disorder, had significant deficits in his cognitive functioning, had been pathologically attached to his mother, and had been depressed for years. She believed that the defendant was borderline, dependent, paranoid, histrionic, and antisocial. She believed that the defendant was insane at the time of the offenses, lacking substantial capacity to conform his conduct to the requirements of the law. She stated that the defendant was experiencing a brief psychotic disorder at the time of the attack on his parents. The defense also presented extensive testimony from the defendant's friends, who described the defendant's difficult home life and the troubled nature of his parents' relationship and of his relationship with his father.

Dr. Henry Lahmeyer, a psychiatrist, examined the defendant on behalf of the State. Dr. Lahmeyer concluded that the defendant was not insane at the time of the of-

fenses here. In reaching this conclusion, Dr. Lahmeyer relied on his interview with the defendant, as well as on his review of police reports and grand jury transcripts, the defendant's school records, and other relevant materials. Dr. Daniel Hardy, a psychiatrist, also examined the defendant on behalf of the State. Like Dr. Lahmeyer, Dr. Hardy concluded that the defendant was sane at the time of the offenses.

At the conclusion of the trial, the jury returned verdicts finding the defendant guilty but mentally ill of the murders of his parents, and guilty but mentally ill of the solicitation of their murders. The trial judge sentenced the defendant to a mandatory term of natural life imprisonment for the first degree murders. The judge also imposed concurrent terms of 35 years' imprisonment for the solicitation convictions.

The defendant appealed, and the appellate court, with one justice dissenting, reversed the defendant's convictions and remanded the cause for a new trial. The court found the GBMI provisions unconstitutional on two grounds. First, the court believed that the statutory scheme is confusing and can only encourage juries to reach compromise verdicts. Second, the court believed that the statute places conflicting burdens on the defense, by requiring the defense to prove both insanity and mental illness. 288 Ill. App. 3d 935. The State appeals, as a matter of right, from the appellate court's determination that the statute is unconstitutional. 134 Ill. 2d R. 317. We consolidated the appeal with No. 83527, People v. Lantz.

I

We will first address the issue common to the cases consolidated here, whether the GBMI statute is constitutional. The defendants raise two principal objections to the GBMI provisions. First, they argue that the statutory scheme violates due process because it places conflicting

burdens on the defense. Second, they argue that the provisions violate due process because they improperly encourage juries to render compromise verdicts.

Section 115—4(j) of the Code of Criminal Procedure of 1963 provides, in pertinent part:

"When the affirmative defense of insanity has been presented during the trial, the court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill, as to each offense charged and shall separately instruct the jury that a special verdict of guilty but mentally ill may be returned instead of a general verdict, but that such special verdict requires a unanimous finding by the jury that: (1) the State has proven beyond a reasonable doubt that the Defendant is guilty of the offense charged; and (2) the defendant has failed to prove his insanity as required in subsection (b) of Section 3—2 of the Criminal Code of 1961, as amended, and subsections (a), (b) and (e) of Section 6—2 of the Criminal Code of 1961, as amended; and (3) the defendant has proven by a preponderance of the evidence that he was mentally ill, as defined in subsections (c) and (d) of Section 6—2 of the Criminal Code of 1961, as amended, at the time of the offense." 725 ILCS 5/115—4(j) (West 1994).

Section 6—2 of the Criminal Code of 1961, which contains the definitions referred to in the preceding quotation, provides:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

(c) A person who, at the time of the commission of a criminal offense, was not insane but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.

(d) For purposes of this Section, 'mental illness' or 'mentally ill' means a substantial disorder of thought,

mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law.

(e) When the defense of insanity has been presented during the trial, the burden of proof is on the defendant to prove by a preponderance of the evidence that the defendant is not guilty by reason of insanity. However, the burden of proof remains on the State to prove beyond a reasonable doubt each of the elements of each of the offenses charged, and, in a jury trial where the insanity defense has been presented, the jury must be instructed that it may not consider whether the defendant has met his burden of proving that he is not guilty by reason of insanity until and unless it has first determined that the State has proven the defendant guilty beyond a reasonable doubt of the offense with which he is charged." 720 ILCS 5/6—2 (West 1994).

A defendant who has been found guilty but mentally ill of an offense may receive any sentence that the same defendant could have received if he had been found guilty of the offense. 730 ILCS 5/5—2—6(a) (West 1994); see also *People v. Crews*, 122 Ill. 2d 266, 277 (1988). Section 5—2—6(b) of the Unified Code of Corrections further provides that a GBMI offender who is sentenced to a term of imprisonment, like the defendants in the present cases, "shall be committed to the Department of Corrections, which shall cause periodic inquiry and examination to be made concerning the nature, extent, continuance, and treatment of the defendant's mental illness. The Department of Corrections shall provide such psychiatric, psychological, or other counseling and treatment for the defendant as it determines necessary." 730 ILCS 5/5—2—6(b) (West 1994). A GBMI offender who receives a sentence of probation, periodic imprisonment, or conditional discharge "shall be required to submit to a course of mental treatment prescribed by the sentencing court." 730 ILCS 5/5—2—6(e)(1) (West 1994).

It is a familiar doctrine that legislation enjoys a presumption of constitutionality, and that the party challenging a statute has the burden of establishing its invalidity. *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 67 (1992); *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 235 (1988); *Pre-School Owners Ass'n of Illinois, Inc. v. Department of Children & Family Services*, 119 Ill. 2d 268, 275 (1988). Our role in evaluating the provisions at issue here is necessarily limited, for we are not called upon to determine whether the legislature has chosen the best or most effective means of resolving the problems addressed in this legislation. *People v. Adams*, 149 Ill. 2d 331, 338 (1992); *People v. Kohrig*, 113 Ill. 2d 384, 392-93 (1986). As a preliminary matter, we note that a constitutional challenge to an earlier version of the GBMI statute was raised in *People v. Fierer*, 124 Ill. 2d 176 (1988), but this court did not resolve the issue, reversing the defendant's convictions on other grounds. Various panels of the appellate court have upheld the statutory scheme against a number of constitutional attacks, including arguments similar to the present defendants' contentions that the statutory scheme encourages compromise verdicts and violates equal protection. *People v. Kneller*, 219 Ill. App. 3d 834 (1991); *People v. Seaman*, 203 Ill. App. 3d 871 (1990); *People v. Smith*, 124 Ill. App. 3d 805 (1984); *People v. DeWit*, 123 Ill. App. 3d 723 (1984).

## A

The defendants first argue that the statutory scheme denies a GBMI offender a fair trial and violates due process by placing conflicting burdens of proof on the defense. According to the defendants, the insanity statute imposes one burden, which requires the defense to prove insanity by a preponderance of the evidence. 720 ILCS 5/6—2(a) (West 1994). The GBMI statute imposes a different burden, requiring the defense to establish mental illness by a preponderance of the evidence. 725

ILCS 5/115—4(j) (West 1994). As the defendants observe, insanity and mental illness are defined in mutually exclusive terms, and a person cannot be both one and the other simultaneously. Section 6—2(a) of the Criminal Code of 1961 provides that an offender is insane if "as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." 720 ILCS 5/6—2(a) (West 1994). Section 6—2(d) defines the term "mental illness" as "a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." 720 ILCS 5/6—2(d) (West 1994). The defendants thus argue that the statutory scheme imposes conflicting burdens on the defense, for it requires a defendant to prove the inconsistent and contradictory conditions of insanity on one hand and mental illness on the other.

We do not agree with the defendants that the preceding provisions improperly require the defense to prove inconsistent propositions at the same time. That the defendant bears the burden of persuasion on the issue of mental illness does not mean that the defense must forgo presenting evidence of insanity in favor of presenting evidence of mental illness. As the terms are defined, mental illness is a less serious form of psychological functioning than insanity. The assignment of a burden of persuasion to the defendant on the question of mental illness simply recognizes that the defense, rather than the prosecution, is the party who will generally introduce evidence on the issue of the defendant's mental condition. In the course of attempting to establish insanity, the defense might fail to prove that proposition and might prove instead mental illness.

In upholding the constitutionality of an earlier version of these provisions, the court of appeals in *United States ex rel. Weismiller v. Lane*, 815 F.2d 1106 (7th Cir. 1987), noted:

> "Although the terms defining 'mental illness' in the GBMI statute and 'mental disease or defect' in the insanity defense may not be identical, a finding of GBMI essentially amounts to a conclusion that the jury believes some of the defendant's insanity defense, *i.e.*, that he has some sort of mental defect, but not that his mental condition rendered him unable to appreciate the wrongfulness of his behavior or to conform his conduct to the requirements of law. All the special verdict does is to allow the jury to articulate this conclusion in a definite form." *Weismiller*, 815 F.2d at 1110.

Moreover, jurors' consideration of these issues during their deliberations is carefully channeled. Under the GBMI statutory scheme, the jury does not consider mental illness until it has first decided the defendant's claim of insanity. Thus, the jury does not determine insanity and mental illness simultaneously. The jury must consider first whether the defendant committed the acts forming the basis for the charged offense, next whether the defendant was insane, and finally whether the defendant was mentally ill. We believe that the sequence in which these issues are resolved by the jury further demonstrates that the defense in a GBMI case does not have the burden of establishing conflicting propositions at the same time.

For these reasons, we do not believe that the present case is like *People v. Reddick*, 123 Ill. 2d 184 (1988), cited by the defendants, in which this court found error in the jury instructions used to distinguish voluntary manslaughter from murder. At issue in that case were jury instructions requiring the prosecution to establish a mental state that would sustain a conviction for voluntary manslaughter. Yet often proof of the mitigating mental state would come not from the prosecution but

from the defense. Thus, a conscientious jury, following its instructions to the letter, would be unable to return a verdict of voluntary manslaughter, when the mitigating evidence came from the defense. *Reddick*, 123 Ill. 2d at 194-95. Contrary to the defendants' arguments, in the GBMI context the defense is not required to shoulder conflicting burdens and establish contradictory propositions in an effort to obtain a more lenient or mitigating result. As we have explained, the jury does not consider the insanity and GBMI options at the same time. Furthermore, evidence regarding a defendant's mental or psychological functioning will likely come from the defense. In *Reddick*, in contrast, mitigating evidence would have in all likelihood come from the defense, yet the instructions placed the burden of producing the evidence on the State.

## B

The defendants also argue that the GBMI provisions improperly encourage juries to return compromise verdicts. The defendants maintain that the GBMI verdict presents jurors with a meaningless choice, and that it improperly invites jurors to consider the dispositional effect of their decision. As we explain below, we do not believe that the statutory scheme possesses either fault attributed to it by the defendants.

The defendants first contend that the GBMI provisions provide jurors with a misleading and meaningless choice. The defendants maintain that jurors will reasonably believe that a GBMI verdict denotes a lower level of culpability, falling somewhere between a finding of not guilty by reason of insanity, on one hand, and a finding of guilty, on the other hand. The defendants assert that the conjunction "but" in the phrase "guilty but mentally ill" connotes a reduced state of guilt and implies that a finding of GBMI represents a mitigating mental state. The defendants additionally argue that the GBMI

instructions, by placing the burden of proof for this issue on the defense, will lead juries to believe that the verdict is something the defense wants. According to the defendants, the GBMI finding thus seems to provide jurors with a compromise between insanity and outright guilt. The defendants note, however, that this court has previously explained that a person found guilty but mentally ill "is no less guilty than one who is found guilty and not mentally ill." *People v. Crews*, 122 Ill. 2d 266, 278 (1988). The defendants thus argue that the GBMI verdict misleads jurors about the real significance and meaning of that choice.

Contrary to the defendants' argument, we do not believe that the GBMI verdict represents a meaningless option. The separate verdict helps clarify for the jury the differences between insanity and mental illness that falls short of insanity. The court of appeals in *United States ex rel. Weismiller v. Lane*, 815 F.2d 1106 (7th Cir. 1987), rejected a similar contention that the GBMI verdict encourages juries to render false compromise verdicts. The court explained:

> "The state has a legitimate interest in having juries decide cases according to the law. The legislature could well have believed that many defendants were being found not guilty by reason of insanity even though they did not satisfy the legal standard for the defense.
>
> The difficulty is that lay juries are presented with complicated and to some extent conflicting notions of what renders a person 'insane' in legal, psychiatric, and common sense terms. The GBMI statutes are designed to insure that the jury applies the *legal* definition of insanity, by underscoring that a person might be 'mentally ill' in clinical terms, 'crazy' in common sense terms, yet not legally insane. ***
>
> We believe it is beyond question that the state could instruct a jury that it cannot acquit on the basis of insanity unless the legal test for insanity has been met. We see no additional objection which can be raised because the

state chooses to formalize these instructions by providing a separate verdict form." (Emphasis in original.) *Weismiller*, 815 F.2d at 1112.

As the *Weismiller* court explains, the GBMI option helps clarify the distinction between insanity and mental disorders that do not meet the definition of insanity.

The defendants note, however, that the GBMI statute applicable in these cases differs from the statute involved in *Weismiller*. The defendant now bears the burden of persuasion on the issue of mental illness, while under former law the State bore that burden. Although the GBMI statute applicable in this case is somewhat different from the statute at issue in *Weismiller*, we do not believe that the differences between the two versions of the statute affect the relevance of the analysis used by the *Weismiller* court in rejecting the contention that the statutory scheme encourages juries to return false compromise verdicts.

As an additional reason by which the GBMI option may encourage the return of false compromise verdicts, the defendants argue that the GBMI verdict option improperly leads jurors to consider the possible dispositional effect of their decisions, distracting them from a consideration of the defendant's guilt.

We do not agree with the defendants that it is improper for the State to ask jurors to determine whether a person raising an insanity defense is instead mentally ill. Providing the jury with the GBMI option enables the jury to identify offenders who are in need of treatment while they are incarcerated. Section 5—2—6 of the Unified Code of Corrections provides various treatment options for defendants who have been found guilty but mentally ill. 730 ILCS 5/5—2—6 (West 1994). That the jury is not informed of the consequences of its determination does not render this purpose invalid. As the court of appeals explained in rejecting a similar challenge to

New Mexico's GBMI statute:

> "The jury need not be informed of the consequences of a GBMI verdict in order for the verdict to have the effect of signaling to the sentencing court or the corrections department that the defendant may be in need of psychiatric treatment. The jury accomplishes this purpose simply by finding the defendant mentally ill." *Neely v. Newton*, 149 F.3d 1074, 1081 (10th Cir. 1998).

The defendants also briefly raise an equal protection challenge to the GBMI statute. Having found that the GBMI statute violates due process, the appellate court in No. 83641 (*Robles*, 288 Ill. App. 3d 935), did not address this additional argument. It is readily apparent that the statute bears a rational relationship to a legitimate governmental interest. We have already identified several legislative purposes in enacting the GBMI statute. As we have noted, the verdict helps the jury in determining whether someone is insane, in identifying offenders who are mentally ill, and in sentencing of mentally ill offenders. We believe that these aspects of the statutory scheme are legitimate purposes, and that the legislation bears a rational relationship to these goals. See *United States ex rel. Weismiller v. Lane*, 815 F.2d 1106, 1110-12 (7th Cir. 1987) (rejecting equal protection challenge to former version of Illinois GBMI statute); *State v. Neely*, 112 N.M. 702, 708-09, 819 P.2d 249, 254-55 (1991) (rejecting equal protection challenge to New Mexico's GBMI statute).

## II

As a final matter, we consider several issues peculiar to the individual appeals. The defendant in No. 83527, Lantz, raises several additional challenges to his conviction and sentence. Lantz first argues that the trial judge should not have submitted the GBMI instructions to the jury because they were not supported by the evidence. The defendant notes that his own experts testified that he was insane, while the State's expert believed that he was not mentally ill. The defendant thus asserts that the

GBMI option given to the jury in his case finds no support in the record. We do not agree. The trial judge appropriately gave the jury the option of considering whether the defense evidence fell short of establishing insanity yet did show that the defendant was mentally ill, as that term is defined under the GBMI provisions. Moreover, we believe that the evidence in this case was sufficient to sustain the jury's determination that the defendant was not insane at the time of the offense.

Lantz also contends that his 38-year sentence of imprisonment for first degree murder is excessive. A sentence will be affirmed on appeal unless it represents an abuse of discretion. *People v. Streit*, 142 Ill. 2d 13, 18-19 (1991); *People v. Cox*, 82 Ill. 2d 268, 273-76 (1980); *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). The same judge presided at the defendant's trial and sentencing hearing, and he was therefore familiar with the extensive evidence of the defendant's mental condition. In mitigation, the judge considered the defendant's lack of a criminal record, his history of alcoholism, and his mental history. In aggravation, the judge noted the circumstances of the murder and the effect of the crime on the defendant's daughter. Declining to sentence the defendant to an extended term, the judge imposed a term of 38 years.

We cannot say that the trial judge abused his discretion in sentencing the defendant to 38 years' imprisonment. The judge carefully considered the aggravating and mitigating circumstances in this case. We do not believe that the sentence is excessive, even when considered in relation to the defendant's age, 55.

Lantz summarily raises several allegations of trial error in his petition for leave to appeal. He does not support these additional contentions with argument or citation to authority, however, and therefore we conclude that they have been waived. 166 Ill. 2d R. 341(e)(7) (argu-

ment portion of brief "shall contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on"; "[p]oints not argued are waived").

The defendant in No. 83641, Robles, renews two additional arguments in support of the judgment of the appellate court. Robles presented these questions to the appellate court, which did not reach the issues, given its holding that the GBMI provisions are unconstitutional. The State, appellant in this court, moved to strike these portions of the defendant-appellee's brief, arguing that the appropriate procedure generally is to remand the matter to the appellate court so that previously unaddressed issues may be considered there first. We ordered the State's motion taken with the case. Shortly before the matter was argued orally in this court, the State submitted a brief on these additional issues. The defendant has not submitted a reply brief. For these reasons, we believe that it is appropriate to remand the matter to the appellate court so that the appellate court may address these additional questions. The State does concede, however, that the defendant's two convictions and sentences for the inchoate offense of solicitation of first degree murder must be vacated (see *People v. Hairston*, 46 Ill. 2d 348, 356-57 (1970)), and therefore we vacate them here.

For the reasons stated, the judgment of the appellate court in cause No. 83527 is affirmed. The judgment of the appellate court in cause No. 83641 is reversed in part and vacated in part, and the cause is remanded to the appellate court for further proceedings.

*No. 83527—Judgment affirmed.*
*No. 83641—Judgment reversed in part*
*and vacated in part;*
*cause remanded.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

In these two consolidated but unrelated criminal cases, juries found defendants guilty but mentally ill (hereinafter GBMI) of first degree murder. On appeal, defendants argued that the GBMI verdict violates the due process clauses of the United States and Illinois Constitutions because it imposes conflicting burdens of proof on defendants in insanity defense cases and encourages compromise verdicts. The majority rejects both of these arguments and holds that the GBMI verdict is constitutional. While I agree with the majority that the GBMI verdict does not impose conflicting burdens of proof, I cannot join the majority's holding that the GBMI verdict does not encourage compromise verdicts. GBMI is a meaningless verdict which dupes the jury into believing that there is a middle ground between guilty and not guilty by reason of insanity. In reality, the GBMI verdict is no different from a guilty verdict. Presenting this option to the jury encourages compromise verdicts and injects irrelevant sentencing considerations into the jury's determination of defendant's criminal culpability. Such results are incompatible with due process of law. Therefore, I respectfully dissent.

This court concluded in *People v. Fierer*, 124 Ill. 2d 176 (1988), that "the interrelationship between the insanity and GBMI statutes is rife with potential confusion and other difficulties." *Fierer*, 124 Ill. 2d at 189. The pattern jury instructions for a GBMI verdict are so woefully inadequate that the jury is left simply to guess at its meaning. As a result of this confusion, juries inevitably will conclude that GBMI is a middle ground between a guilty verdict and a not guilty by reason of insanity verdict. Few juries will realize that this middle ground is illusory and, in reality, "there is no difference between

being found guilty and being found guilty but mentally ill that is likely to benefit a defendant." Report of the Governor's Commission to Revise the Mental Health Code of Illinois 61 (1989). A GBMI verdict does not result in a reduced sentence. A defendant found GBMI may be sentenced to the full range of punishments, including the death penalty, that may be imposed when a defendant is found guilty. *People v. Crews*, 122 Ill. 2d 266, 277 (1988). Nor does a GBMI verdict guarantee that a defendant will receive treatment for his mental illness while incarcerated. 730 ILCS 5/5—2—6(b) (West 1996).[1] A GBMI verdict rendered by a jury operating under these inevitable misconceptions is a false compromise verdict and renders defendant's trial so fundamentally unfair that it violates due process. See *People v. Smith*, 152 Ill. 2d 229, 269 (1992), quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 645, 40 L. Ed. 2d 431, 438, 94 S. Ct. 1868, 1872 (1974).

The majority advances two justifications for the GBMI verdict. First, the majority asserts that the GBMI verdict helps "clarify" for the jury the differences be-

---

[1]Section 5—2—6 of the Unified Code of Corrections leaves treatment of a GBMI offender completely within the discretion of the Department of Corrections. That section provides that "[t]he Department of Corrections shall provide such psychiatric, psychological, or other counseling and treatment for the [GBMI] defendant *as it determines necessary*." (Emphasis added.) 730 ILCS 5/5—2—6(b) (West 1996). Nothing prevents the Department of Corrections from simply ignoring the jury's determination that a defendant is mentally ill and providing no treatment once the defendant is incarcerated. See *People v. Marshall*, 114 Ill. App. 3d 217 (1983) (GBMI verdict does not create a right to treatment beyond the constitutional right to minimally adequate health care available to all prisoners). In fact, even when defendants found GBMI do receive psychiatric treatment, it is identical to the treatment provided to defendants who are simply found guilty. Report of the Governor's Commission to Revise the Mental Health Code of Illinois 61 (1989).

tween insanity and mental illness that falls short of insanity. 186 Ill. 2d at 258. The majority concludes that " '[t]he legislature could well have believed that many defendants were being found not guilty by reason of insanity even though they did not satisfy the legal standard for the defense.' " 186 Ill. 2d at 258, quoting *Weismiller v. Lane*, 815 F.2d 1106, 1112 (7th Cir. 1987). This is a remarkably cynical view of juries' ability to follow the law in insanity defense cases. One of the most basic assumptions underlying the right to a jury trial is that juries are able to follow instructions. *People v. Cole*, 131 Ill. App. 3d 36, 42 (1985). The majority does not cite *any* empirical evidence to support its assertion to the contrary. Reducing the number of purportedly "erroneous" verdicts of not guilty by reason of insanity may be a legitimate state interest, but the GBMI verdict is an illegitimate means for advancing this interest. The State cannot attempt to reduce the number of not guilty by reason of insanity verdicts by presenting the jury with a misleading verdict which is devoid of any consequence and entices the jury to reach a false compromise verdict. Subterfuge is incompatible with the principle of fundamental fairness which animates the due process clause. *Smith*, 152 Ill. 2d at 269.

The majority also asserts that the GBMI verdict enables the jury to identify offenders who need psychiatric treatment while they are incarcerated.[2] 186 Ill. 2d at 259. This argument is specious. There is absolutely no need for the jury to signal to the court or the Department of Corrections that a defendant is mentally ill and needs psychiatric treatment. The Department of Corrections is required to evaluate *every* convict's medical and

---

[2]Of course this "signaling" justification does not apply in cases where the GBMI offender receives the death penalty. See *People v. Crews*, 122 Ill. 2d 266 (1988) (holding GBMI verdict does not preclude imposition of the death penalty).

psychological history (as well as the circumstances of the offense) and recommend appropriate medical and psychiatric treatment when the convict is first incarcerated. 730 ILCS 5/3—8—2 (West 1996). Such an evaluation is far superior to a GBMI verdict because it is made by qualified experts rather than by jurors with little or no expertise in this area.

On a more fundamental level, juries have no business deciding whether criminal defendants need psychiatric treatment. The jury's function is to determine defendant's guilt. *People v. McDonald*, 62 Ill. 2d 448, 456 (1975). Juries are not empaneled to act as psychiatrists, social workers or priests. Whether a criminal defendant is mentally ill and needs psychiatric treatment is an "extraneous and irrelevant matter[ ]" which has no bearing on the defendant's criminal culpability and responsibility for his actions. See *People v. Meeker*, 86 Ill. App. 3d 162, 170 (1980); see also ABA Criminal Justice Mental Health Standards, Standard 7—6.10, Commentary at 393 (1989) (stating GBMI is "not a proper verdict at all" but instead is "a dispositional mechanism transferred to the guilt determination phase of the criminal process"). Allowing the jury to consider the consequences of its verdict invites the jury to reach a compromise verdict. *Meeker*, 86 Ill. App. 3d at 170; *People v. Stack*, 244 Ill. App. 3d 166, 178 (1993); *People v. Glenn*, 233 Ill. App. 3d 666, 680 (1992).

The majority attempts to evade the problem of compromise verdicts by stating that the jury simply need not be informed that the only effect of a GBMI verdict is to signal to the court or the Department of Corrections that defendant needs psychiatric treatment. 186 Ill. 2d at 259. This argument compounds rather than resolves the problem with the GBMI verdict. It does not change the fact that the jury is performing an illegitimate function. Not informing the jury what function it is performing

when it finds a defendant GBMI is self-defeating because it guarantees that the signal the jury sends to the court or the Department of Corrections will be an ill-informed one. The majority's willingness to endorse the manipulation of juries corrupts both the jury system and the rule of law.

Ultimately, the GBMI verdict presents a choice between a fundamentally fair criminal justice system and one which merely appears to be fair. The GBMI verdict is incompatible with due process of law and should be declared unconstitutional.

For all of these reasons, I respectfully dissent.